## T. H. Winn v. Simon Abeles.

1. **Unintentional Encroachment; *Possession, Not Adverse.*** Where the owner of a city lot undertakes to erect a building upon his own ground, but by inadvertence and ignorance of the true line of his lot, places a portion of the wall four inches over the dividing line and upon the adjoining lot, but with no intention then or afterward to claim any portion of such adjoining lot as his own, and the adjoining lot-owner had no knowledge of such encroachment, the possession thus taken will not be adverse.

2. ————— *Lateral Support.* While an owner is entitled to claim that his land shall have the lateral support of the soil of the adjoining land, this right is limited to the soil in its natural condition, and does not include anything which may be placed thereon which sensibly increases the burden.

3. **Excavation** *on Verge of Lot; Damages.* The fact that a land-owner has erected a building upon the verge of his lot will not preclude an adjacent lot-owner from excavating to the usual depth, and to the extreme limits of his lot, preparatory to the erection of a building thereon, nor make him liable for any damage thereby occasioned to his neighbor's building, providing the excavation is made with reasonable skill and caution, and with no improper motive.

*Error from Leavenworth District Court.*

THE opinion states the case. Trial at the April Term, 1884, and judgment for defendant. The plaintiff *Winn* brings the case here.

*Thomas P. Fenlon,* for plaintiff in error.

*Lucien Baker,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: Simon Abeles leased to T. H. Winn lot 9 in block 49, in the city of Leavenworth, upon which there was a one-story brick building, for the term of two years, commencing August 1, 1881. Winn took possession at once, and used the building as a dry-goods and notion store, and occupied it for that purpose until the building fell, on April 4, 1883. The falling of the building injured his stock to some

extent, and made it necessary to remove the same to another location. Winn thereupon brought suit against Abeles, charging that he wrongfully and negligently permitted and caused the soil to be excavated and moved from the west side of lot 9 without leaving sufficient support to the building, thereby causing its fall; in consequence of which, he alleged he was damaged to the extent of $2,801.50, for which he asked judgment. The answer of the defendant was a general denial. At the trial it was shown that the lot adjoining on the west, which was known as lot 10, was owned by one John F. Colyer, by whom it had been owned since 1863. He had erected. a brick building on the lot in 1864, which remained there until January, 1883, when he removed it, preparatory to the erection of a large new building. The building upon lot 9, in which the plaintiff was doing business, was erected about 1865, and had been placed from two to four inches over upon lot No. 10, but the fact that it extended beyond the west line of lot 9 was not discovered or known until about the time that the building fell. In February, 1883, Colyer began an excavation on his lot for the building he proposed to erect, digging the full width of the lot, and to the depth of seven feet. Soon afterward Abeles became apprehensive that the excavation would injure his building, and so notified Colyer; but, notwithstanding this, Colyer continued to excavate up to the east line of his lot. On March 14, 1883, Abeles entered into a contract with Colyer by which it was agreed that a party wall should be constructed upon the dividing line between lots 9 and 10, which provided at length for the manner in which it should be done, and how the expense should be apportioned; and it contained a provision looking to the protection of the west wall of Abeles's building. Testimony was offered tending to show that when Abeles observed that his west wall was endangered by the action of Colyer, he proposed to Winn to protect him as well as the building, by the erection of a temporary wall, and that, although the plaintiff knew of the danger occasioned by the excavation, he refused to permit Abeles to thus protect the building. Under the agreement the exca-

vation was begun for the purpose of putting in a party wall, and some supports were put under the west wall of Abeles's building, but because they were insufficient, or by reason of an unusually strong wind, or for some other reason, the wall fell. The jury made special findings upon questions that were submitted, and also found generally in favor of the defendant.

Complaint is made of the instructions; and counsel for plaintiff says that the question presented for review is, whether the defendant had any right to permit the excavation to be made or to enter into a contract for the construction of a party wall during the term of the plaintiff's lease. Under the lease the plaintiff was of course entitled to the quiet enjoyment of the leased premises without unnecessary interference from the defendant. But if an emergency arose during the term of the lease which made it necessary that something should be done to preserve the building from destruction or material damage, and which did not occur through the fault of the landlord, he would have a right to do whatever was reasonably necessary to preserve it from destruction or injury. This was the ruling of the trial court, and it is not combatted by the plaintiff. He contends, however, that no cause which would justify the interference of the defendant had arisen. His claim is that the building having stood over upon lot 10 for more than fifteen years, the title to that part occupied by the building, by virtue of the statute of limitations, vested in Abeles; and therefore Colyer had no right to excavate under the wall beyond the limit of lot 10, and that Abeles had no right to apprehend an encroachment, or to consent to an interference with the wall as it stood. The court below proceeded upon the theory that Colyer owned and had the right to use all of lot 10, and the question therefore arises whether the occupancy of a portion of the adjoining lot by the building is such a possession as would ripen into a title in favor of Abeles. Undoubtedly the strip had been occupied by the Abeles building for more than fifteen years; but possession alone is not sufficient to confer title. The holding must be hostile and adverse as

against the true owner. There must, in addition to actual possession, be an intention of the party in possession to claim the land as his own. The occupancy of Abeles was not taken under color or claim of title; nor was there any purpose to oust or dispossess Colyer. The undisputed facts show that Abeles had no knowledge that his building extended beyond the boundary line of his lot, until about the time that this controversy arose. He supposed his building rested entirely upon lot 9, and made no claim to any portion of the adjoining lot, and he is here now asserting that he does not own or claim the narrow strip of lot 10 upon which his wall had inadvertently been placed. Colyer was equally ignorant that the building of Abeles extended beyond the dividing line of the lots. No survey had been made, and it does not appear that there was any agreement that the line to which the wall extended should be taken as the true line. It will thus be seen that there was no adverse possession. One of the essential requisites to obtaining title through the statute of limitations was wanting, viz: the intention of Abeles to claim the land exclusively and as his own. "Mere occupation by inadvertence or mistake without *any intention* to claim title may not be a disseizin, as where a fence is erroneously erected not on the dividing line." (*Abbott v. Abbott,* 51 Me. 575.)

1. Unintentional encroachment; possession, not adverse.

In *St. Louis University v. McCune,* 28 Mo. 481, an alleged encroachment beyond the boundary line was under consideration, and the court held that if the party erected an improvement accidentally upon the land of another through mistake or ignorance of the correct line dividing the tracts, and without intending to claim beyond the true line, the occupation thus taken and the possession which followed did not work a disseizin.

In *Hitchings v. Morrison,* 72 Me. 331, a case where a party claimed title to a strip upon an adjoining lot upon the basis of adverse possession, it was held that if the occupation was not accompanied by a claim of title in fact, but was merely inadvertence or mistake as to the extent of his line, without

intention to claim title to the extent of his occupation, but only to the bounds described in his deed, then it was not adverse and would not give title.

In *Howard v. Ready*, 29 Ga. 152, it was held that a possession originating in and continuing under a mistake or misapprehension as to the true lines dividing two lots of land, will not ripen into statutory title. The current of the authorities runs in the same line. (*Rickard v. Hibbard*, 73 Me. 105; *Brown v. Cockerall*, 33 Ala. 38; *Enfield v. Day*, 7 N. H. 457; *Riley v. Griffin*, 16 Ga. 141; *Brown v. Gray*, 3 Greenl. 126; *Walbrunn v. Ballen*, 68 Mo. 164; Sedgwick and Wait on Trial of Title to Land, §§ 759, 760; Tiedeman on Real Property, § 699.)

Counsel for plaintiff insists if the occupancy continued during the statutory period it will constitute an adverse holding, even if the building was extended over the boundary line through a mistake, and cites *French v. Pearce*, 8 Conn. 439, and some other authorities, to sustain his position. The authorities which he cites do not go to the extent claimed. It is evident from the foregoing authorities that in a question of boundaries, possession does not count for as much as where the whole tract is held adversely against a claimant. The authorities which he cites only go to the extent of holding that property occupied by a mistake, and which is *claimed* by the occupant *as his own*, will constitute an adverse possession. None of them hold that the intention to appropriate the property occupied as that of the occupant can be dispensed with. In *French v. Pearce*, supra, so much relied on by counsel, it was expressly held that the intention of the possessor claiming adversely is an essential ingredient, and that the person entering upon the land under a mistake must actually hold it as *his own*. The same court at a later day, in passing upon a case where a division fence between the lands of A and B was a stone wall three feet wide set wholly on the land of A, and B had for more than fifteen years held exclusive possession of his own land up to the wall, treating the center of the wall as the dividing line, and believing it to be so, but with no knowledge of such claim on the part of A, and with no other possession of the ground covered

by the wall, held that there was not a sufficient adverse posses-
sion to vest in B a title to the center of the wall. ( *Huntington
v. Whaley*, 29 Conn. 391.) It follows from these authorities
and the undisputed testimony that the accidental and inad-
vertent encroachment upon the four-inch strip of Colyer's lot
will not constitute an adverse possession.

It is further urged in behalf of the plaintiff, that the Abeles
building having stood for twenty years or more upon the land
of another gave its owner a prescriptive right in such land for
the support of his building. The old rule respecting ancient
buildings invoked by the plaintiff, and which is said to be in
analogy to the rule as to ancient lights, is a doctrine unsuited
to the condition of things existing in this country, and which
it has been decided cannot be recognized or made applicable
here. (*Lapere v. Lucky*, 23 Kas. 534; *Hieatt v. Morris*, 10
Ohio St. 523; Wood on Nuisance, § 200.) Much of the argu-
ment made in support of the claim that Colyer had no right
to excavate to the extreme limits of his lot is based upon the
theory that the west wall of the Abeles building was a party
wall, which it appears was not the fact. The wall was en-
tirely separate and independent of any other structure on lot
10, and the owner of that lot had never owned lot 9 or con-
tributed toward the construction of the wall, nor had either
of the parties ever treated or regarded it as a party wall. It
was built upon the surface, did not extend the full length of
the lots, and had none of the characteristics of a party wall;
and the rules relating to party walls do not, therefore, apply.
Colyer was the absolute owner of all of lot 10, and had en-
tire dominion over the same, both above and below the sur-
face, limited only by the rule that he should so use it as not
to injure the property or impair the existing rights of others.
It is insisted that the rule last mentioned gave Abeles the right
to the support of the soil of lot 10 for his wall, a support
which could not be disturbed by excavations. This conten-
tion is certainly not sound. Abeles was entitled
2. Lateral support.    to the lateral support of the soil of the adjoin-
ing lot, but this right did not extend to the support of the

buildings which he might have placed on his lot. The right extends only to the soil, and does not include anything placed thereon which sensibly increases the pressure. A person cannot be deprived of the use of his land for ordinary and legal purposes by reason of the fact that an adjoining land-owner may, before that time, have erected a structure upon his land. It has been held that a man who builds a house adjoining his neighbor's land should foresee the probable use by his neighbor of the adjoining land, and by an agreement, or by a different arrangement of his house, secure himself against future interruption and inconvenience. (*Thurston v. Hancock*, 12 Mass. 220.) The reason for the rule has been stated to be —

"That if one land-owner sees fit to erect a house at the confines of his own land, it is his own folly, and he cannot, by being prior in point of time, prevent his neighbor from building there also, and the only restriction imposed upon the adjacent owner is that he must not negligently or carelessly excavate upon his own land, but if he proceeds with ordinary care he will be excused from liability, no matter how great the damage of his neighbor's buildings." (Wood's Law of Nuisances, § 185.)

It seems to be well settled by the authorities that where an excavation is made by a lot-owner for an ordinary and proper purpose, which does not extend beyond the limits of his own land, and which is not done unskillfully, negligently or with improper motives, that an injury occasioned to the building upon the adjoining lot is *damnum absque injuria.* (*City of Quincy v. Jones*, 76 Ill. 231; *Charless v. Rankin*, 22 Mo. 566; *Panton v. Holland*, 17 Johns. 92; *Shrieve v. Stokes*, 8 B. Mon. 453; *Railroad Co. v. Reaney*, 42 Md. 117; *Rockwood v. Wilson*, 65 Mass. 221; *McGuire v. Grant*, 1 Dutch. 356; *Radcliff's Executors v. Mayor, &c.*, 4 Comstock, 195; *Foley v. Wyeth*, 2 Allen, 131; Washburn's Easements, 521; 1 Sutherland on Damages, 3.)

*3. Excavation on verge of lot; damages.*

There are numerous other authorities which go to the same extent, many of which are referred to in those that have been cited, and it is universally held in all that in cases like the present one, only reasonable care and diligence are required of

the party making the excavation. Where there is a building upon the adjoining lot which may be injured by the excavation, it would ordinarily be the duty of the party to give the owner of such building sufficient notice so that he might adopt means for its protection. Here the excavation was made for a proper purpose and not to an unusual depth, and whether it was done with ordinary care and diligence has been submitted to the jury and resolved in favor of the defendant. Both Winn and Abeles had ample notice that the excavation was to be made; and it may be remarked that the jury found that about the time the excavation was begun, Abeles proposed to Winn to put in a temporary wall that would prevent any damages in case the west wall of the building should fall, and that Winn refused to give his consent. He is therefore in no position to complain, and neither of the positions which he has advanced in argument can be sustained.

It is finally urged that the court erred in permitting Abeles to testify that he acted under the advice of E. T. Carr, who was an architect, in the steps taken to protect his building. The jury specially found that Mr. Carr was a skillful and competent architect, and also that the wall which was the subject of agreement between Abeles and Colyer, was reasonably necessary for the protection of the building occupied by Winn. In determining what action he should take to protect the building, it was proper for Abeles to consult a practical and skillful man who had had experience in such matters, and to regard his advice in the means employed to accomplish his purpose. The testimony complained of was therefore competent to prove that he acted with reasonable caution and with good faith in the steps taken by him.

We think there should be an affirmance of the judgment rendered by the district court, and it is so ordered.

All the Justices concurring.