H. F. SHELDON v. ROBERT ATKINSON.

DIVISION LINE, *When, and Upon Whom, Binding.* If a corner and a division line are established by a parol agreement between two proprietors of adjoining lands, and such corner and division line are acted upon and acquiesced in for a period of time equal to the statute of limitations, such corner and division line are binding and conclusive on the parties and those claiming under them.

*Error from Franklin District Court.*

ON May 31, 1884, *H. F. Sheldon* commenced his action against *Robert Atkinson,* to recover the immediate possession of the following-described lands and tenements situate in Franklin county: Commencing 935 feet south of the northeast corner of the northeast quarter of section two, in township seventeen, of range nineteen, running thence south forty feet, thence running west to the Southern Kansas Railway, thence running north forty feet, thence east to the place of beginning. On June 26, 1884, Atkinson filed his answer containing a general denial, and also setting up the fifteen-years statute of limitation. On January 7, 1885, Sheldon filed a reply denying generally the new matter alleged in the answer. Trial had at the September Term, 1885, before J. W. G., as judge *pro tem.* The court, having heard the evidence and the arguments of counsel, took the case under advisement, and on April 17, 1886, and at the April Term of the court, made the following findings:

"1st. At the commencement of this action the defendant, Robert Atkinson, did unlawfully withhold from plaintiff, H. F. Sheldon, the possession of the following-described tract of land, to wit: Commencing at a point 935 feet south and 400 feet west of the northeast corner of northeast quarter of northeast quarter of section two, township seventeen, range nineteen, Franklin county, Kansas, and running thence west to the Southern Kansas Railway, thence south thirty-six feet, thence east to a point thirty-six feet south of the place of beginning, thence north thirty-six feet to beginning.

"2d. At the commencement of this action the said defend-

ant did not unlawfully withhold from plaintiff the possession of the remainder of the tract of land in plaintiff's petition mentioned, to wit: Commencing at a point 935 feet south of N. E. corner of N. E. ¼ N. E. ¼ of sec. 2, T. 17, R. 19; running thence west 400 feet, thence south 36 feet, thence east 400 feet, thence north 36 feet."

To the first finding Atkinson excepted, and to the second finding Sheldon excepted. Subsequently Atkinson filed a motion for a new trial, and also Sheldon filed a motion for a new trial. Both motions were overruled, and on April 17, 1886, the court rendered the following judgment:

"It is adjudged and decreed that the plaintiff, H. F. Sheldon, have and recover from said Robert Atkinson, defendant, the possession of the following-described lands and tenements, to wit: Commencing at a point 935 feet south and 400 feet west of N. E. corner of N. E. ¼ of N. E. ¼ of sec. 2, T. 17, R. 19; running thence west to Southern Kansas Railway, thence south 36 feet, thence east to a point 36 feet south of the place of beginning, thence north 36 feet to beginning; together with his costs, taxed at $——. And it is further ordered and decreed by the court, that the said Robert Atkinson, defendant, doth not unlawfully withhold from said H. F. Sheldon, plaintiff, the possession of the following-described tract of land, to wit: Commencing 935 feet south of N. E. corner of N. E. ¼ of N. E. ¼ of sec. 2, T. 17, R. 19, Franklin county, Kansas; running thence west 400 feet, thence south 36 feet, thence east 400 feet, thence north 36 feet to beginning, as said plaintiff has in his petition alleged."

Sheldon brings the case to this court.

*Wm. H. Clark*, for plaintiff in error.

*W. Littlefield*, and *Jno. W. Deford*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action in the nature of ejectment, brought by H. F. Sheldon against Robert Atkinson, for the possession of a strip of land in Ottawa, thirty-six feet wide north and south, and about six hundred feet long east and west. Both parties claim title from the same common source, one R. D. Lathrop. The several pieces of land in

which it is claimed there is a surplus of thirty-six feet, owned by Atkinson, are marked upon the map in the record as "the little red piece," "the little blue piece," and "the little white piece." "The little red piece" was purchased from Wilson and Burt, grantees of Lathrop, by Atkinson in April, 1868, but the deed was not executed until the fall of 1868, or later. "The little blue piece" was purchased by Atkinson from Lathrop, April 2, 1868. "The little white piece" was purchased from Sheldon by Atkinson, October 27, 1870. Sheldon alleges that a strip thirty-six feet wide off the south end of these several pieces belongs to him, and that Atkinson keeps him unlawfully out of the possession of the same. Atkinson bases his claim to the strip of land in controversy, first, by fifteen years' adverse possession; and second, by a parol agreement between himself and the owner of the land adjoining his "little red piece" and his "little blue piece" on the south as to a corner and division line, which he contends has been acquiesced in and acted upon for such a long time as to be binding and conclusive.

The trial was had before the court without a jury. No request was made for a finding of the facts specifically. As the court made a general finding only, and as the finding of the court was favorable to Atkinson for the strip of land inclosep in "the little red" and the "little blue pieces," we must assume that all the controverted facts as to this strip were found and established in favor of Atkinson and against Sheldon. (*Knaggs v. Mastin*, 9 Kas. 532.) Again, a general finding in favor of Atkinson for the strip of land in "the little red" and "the little blue pieces," embraces all the facts necessary to constitute his claim thereto, if there was sufficient evidence in support of the same. (*Bixby v. Bailey*, 11 Kas. 359; *Hobson v. Ogden*, 16 id. 388.)

In view of the general finding of the trial court, it appears that although Wilson and Burt did not execute any deed to "the little red piece" to Atkinson until late in 1868, or early in 1869, his purchase, or his agreement to purchase, under which he took possession and claimed to be the owner thereof,

goes back to April, 1868. Soon after the purchase by Atkinson of "the little red piece," he informed Jenness, the owner of the land adjoining on the south of his purchase, and read him a letter concerning the same. About six weeks after this, Jenness went to Atkinson and said he would like to fix the corner between them, as he wanted to build some fence. Atkinson got a colored man and went with Jenness upon the ground to establish the corner of their pieces of land. A tape-line was used, and the measurement was commenced at a government corner-stone on the Jenness property; the parties proceeded from that point north, and measured off three hundred and eighty-five feet, and placed a stake; Atkinson and the colored man carried the line, and Jenness did the marking. The stake was driven at the point established as the northeast corner of the Jenness land, and the southeast corner of the Atkinson land. That fall, or the next spring, the owner of the Jenness land, either Jenness or his grantee, built a fence upon a line commencing at the corner established by Jenness and Atkinson, running directly west to the west line of the land. In the spring of 1869, Atkinson had a hedge-row plowed on the line along the north side of the fence from the stake westward, and around the tract composing the little red and blue pieces. In the spring of 1870, he had the hedge-row replowed, and a hedge planted on the line so plowed, which has since been cultivated and grown, and still remains. At the time of planting this hedge, the stake driven by Atkinson and Jenness at the northeast corner of the Jenness land was noticed. The boundary line projected from the stake driven by Jenness and Atkinson at the corner of their lands, which were subsequently fenced and hedged, was regarded by the various proprietors of the adjoining pieces of land as the division line between them until a short time before the commencement of this action. During all this time Atkinson was an actual resident of this state, and was absent from the state less than nine months. This action was commenced on May 31, 1884, about sixteen years after the stake had been driven°

2 — 38 KAS.

to establish the corner or line between the Jenness and Atkinson lands.

Many of the courts hold that a parol agreement between two proprietors of adjoining lands to employ a surveyor to run the dividing line between them, which agreement is executed and payment had accordingly for a long period of time, but short of that prescribed by the statute of limitations, is binding and conclusive on the parties and those claiming under them. (*Finley v. Funk*, 35 Kas. 668; *Turner v. Baker*, 64 Mo. 218; *Brown v. Edson*, 23 Vt. 435; *Boyd v. Graves*, 4 Wheat. [17 U. S.] 512.) The authorities that do not go to the extent of this rule generally agree that if a division line is marked out and acquiesced in by joining proprietors for a period equal to the statute of limitations, it is thereby conclusively established. (*Kip v. Norton*, 12 Wend. 127; 27 Am. Dec. 120; 27 Am. Rep. 230.)

In a review of cases of the voluntary adjustment of boundaries between contiguous estates, Judge Cooley says "the parties have only by their agreement and contract determined the limits of their respective ownerships."

Redfield, J., in *Beecher v. Parmele*, 9 Vt. 352, said:

"If an entire lot be owned by different proprietors, who are in possession of separate parcels of the lot, and a divisional line is acquiesced in for fifteen years, it is thereby established. If no line of division be in fact drawn, but the parties acquiesced in an imaginary line of division, this is the same as if the line had been marked by visible monuments."

The claim is made, however, on the part of Sheldon, that the agreement between Jenness and Atkinson was merely as to the establishment of a corner, but nothing was said about any boundary, and that no line was fixed westward from the corner established. The fact that Jenness requested Atkinson to agree with him upon a corner between their lands, as he wanted to build a fence; the actual meeting of the parties, and the establishment of a corner by them; the driving of a hard-wood stake to identify and mark the corner; the construction of a fence in the fall of 1868, extending from where

the corner was established, running directly west along the existing division or boundary line; the plowing of a hedge-row, in the spring of 1869, on this division line; the re-plowing, and the planting of a hedge upon this line, in the spring of 1870, support the general finding of the district court that the corner and division line between the lines of Atkinson and Jenness were established by the parol agreement of these parties in the spring or early summer of 1868. All of the boundaries of the various pieces of land mentioned in the pleadings and testimony run north and south and east and west. The purpose of fixing the corner between the lands of Atkinson and Jenness was to determine and mark the com-mencement of a boundary line extending from such corner directly west. Under these circumstances, the fixing of the corner necessarily established the boundary line as running due west therefrom. The corner was not marked or fixed for the purpose of establishing any boundary line running north and south. The place where Jenness wanted to build his fence was at or near the boundary line between his own land and that of Atkinson. As a period equal to the statute of limita-tions had expired between that time and the commencement of this action, deducting the nine months of absence of Atkin-son from the state, we conclude that the corner and the divi-sion line then established and now existing must be regarded as the corner and division line between the land of Sheldon and "the little red and blue pieces" owned by Atkinson.

Again, it is urged that there was no dispute or contention between Atkinson and Jenness at the time of the establishment of the corner between their lands, and it is said that their agreement as to the corner and the marking of the same with a stake goes for naught, notwithstanding the long acquiescence in the corner and division line by all the parties interested. The evidence clearly shows that prior to the time of the estab-lishment of the corner by Atkinson and Jenness, the bound-ary line between their lands was not known, ascertained, or settled; it was not marked by stakes, monuments, or in any other way. The true line of division between their pieces of

land was a subject of settlement between Atkinson and Jenness. They met together, and after a measurement expressly agreed upon a corner between their lands, and from that time to the commencement of this action a line running west from the corner thus established by them was considered the true line of division between the pieces of land. The object of Atkinson and Jenness in ascertaining and agreeing upon a corner was to settle and fix a definite corner and boundary; and therefore it is not like the cases where the corners and boundary line are known and visibly marked, and the adjoining owners attempt for mutual convenience, or other sufficient reason, to transfer land from one to the other by parol agreement to merely change the location of a line. ( *Vosburgh v. Teator*, 32 N. Y. 568.)

It is further claimed that, admitting there was a valid agreement between Atkinson and Jenness fixing the corner and boundary line between their lands more than fifteen years ago, the agreement, although valid as between them, is not binding on Sheldon. The construction of the fence upon the boundary line west of the corner established by Atkinson and Jenness is evidence that at the time the parties understood where the corner and boundary line were established, and acted upon that knowledge. All persons purchasing after the establishment of the corner, and after Atkinson had taken actual possession of the premises in dispute, had notice of his title thereto. When Sheldon purchased, Atkinson had actual, open, visible, notorious, exclusive and adverse possession of the strip now claimed by him. ( *Gilmore v. Norton*, 10 Kas. 491; *Giles v. Ortman*, 11 id. 59; *Johnson v. Clark*, 18 id. 164; *School District v. Taylor*, 19 id. 292; *Tucker v. Vandermark*, 21 id. 263.)

In the case of *Winn v. Abeles*, 35 Kas. 85, there was no agreement as to the actual corners or boundary line, and no hostile and adverse possession; therefore that case is not in conflict with this decision.

We have referred only incidentally to the strip of land on the south end of "the little white piece," because, as we understand the judgment, that strip was recovered by Sheldon.

Atkinson filed a motion for a new trial, which was overruled and properly excepted to, but he has not filed any petition in error, or any cross-petition, in this court; and he is therefore in no condition to complain of the judgment, even if erroneously rendered.

The judgment of the district court will be affirmed.

JOHNSTON, J., concurring.

VALENTINE, J., dissenting: This was an action in the nature of ejectment, brought by H. F. Sheldon against Robert Atkinson, for the recovery of a strip of land in the city of Ottawa, thirty-six feet wide north and south, and six hundred feet long east and west. The court below gave to Sheldon the west two hundred feet of this strip, and to Atkinson the east four hundred feet; and the only controversy in this court is with respect to this four hundred feet.

It is admitted that the land in controversy belongs to Sheldon, unless it has been transferred to Atkinson by some statute of limitations, or by a gift from Sheldon, or from some one or more of the previous owners. It is not claimed that Atkinson ever purchased the property from any person, or that he ever paid anything for it, or that he has any deed for it, or that he has any claim to it by virtue of any written instrument. The supposed transfer of the property by virtue of some statute of limitations, or by a gift, is based upon the following facts: this action was commenced on May 31, 1884. During the fifteen years preceding this date, Atkinson was absent from the state about nine months; hence if any statute of limitations has transferred the title to the property from Sheldon, or from him and his grantors to Atkinson, such statute must have commenced to run about the 31st of August, 1868. The supposed gift occurred in April or May, 1868. The facts upon which it is claimed that the statute of limitations was put in operation and the gift consummated, are substantially as follows: In April, 1868, and prior thereto, Richard Jenness owned the land in controversy, together with other land adjoining. He owned, in all, a piece of land 400

feet wide east and west, and 421 feet long north and south; and the land in controversy is a strip off the north end of this land, thirty-six feet wide, and extending across the land from one side to the other. Wilson and Burt owned a piece of land 200 feet wide east and west, and 415 feet long north and south, immediately north of the east 200 feet of the land in controversy, and Richard D. Lathrop owned the remainder of the land immediately north of the land in controversy. In April, 1868, Atkinson purchased Lathrop's land. He then wrote a letter to Wilson and Burt to ascertain whether he could purchase theirs or not, and the terms. They answered by letter, stating that they would sell at a certain price; and Atkinson then wrote to them again, stating that he would take the land at that price. Immediately afterward, and sometime in April or May, 1868, Atkinson showed Wilson and Burt's letter to Jenness, when Jenness told Atkinson that he would like to ·fix the corner between them, and that he wanted to build some fence. Atkinson and Jenness then with a tape-line measured from the southeast corner of Jenness's land northwardly along the east side thereof, where it fronts on Main street, 385 feet, and drove a stake. Jenness's land extended thirty-six feet further north, and to the land belonging to Wilson and Burt. The east end of the land in controversy lies between this stake and the Wilson and Burt land. Atkinson testified that they "measured off what I supposed and what he supposed was his frontage." The land at that time was unoccupied prairie, not in the actual possession of any person, but constructively in the possession of Jenness, who held the legal title thereto; and it remained in that condition until after August 31, 1868, the time when the statute of limitations is supposed to have commenced to run in favor of Atkinson, and up to September 18, 1868, when Jenness and wife sold and conveyed by a warranty deed all Jenness's land, including the land in controversy, to Ann C. Hedrick. Afterward, and on February 22, 1869, Mrs. Hedrick and husband sold and conveyed by warranty deed all said land to Margaret M. Dickey; and the land has since been sold and conveyed by warranty deeds three or four differ-

ent times, until finally, and on March 19, 1884, it was sold and conveyed by warranty deed by the then owner to Herbert F. Sheldon, the plaintiff in this action. Sometime in the fall of 1868, or later, but just when is not known, Jenness, or Mrs. Hedrick, or Mrs. Dickey, built a fence on this land and along the south line of the land in controversy. On December 31, 1868, Wilson and Burt executed a deed for their land to Atkinson, *but they did not include in their deed any of the land in controversy.* Indeed, they never claimed to own it. They did not receive payment for the land until about this time.

Afterward, and sometime in the spring of 1869, Atkinson had the land in controversy, or a portion thereof, plowed, and in the spring of 1870 planted a hedge-row along the south line of the land in controversy. Everything, however, occurring with respect to this land after Jenness sold and conveyed the land to Mrs. Hedrick is of but little importance, for Atkinson claims solely under a parol gift claimed to have been made in April or May, 1868, and by virtue of a statute of limitations, which if of any value at all must have commenced to run about August 31, 1868, or sooner. At the time when Atkinson and Jenness made their measurement and drove the stake there was no dispute with reference to any boundary line, nor did any dispute arise about boundary lines until in the spring of 1884, when a survey of the land was made and the true boundary lines ascertained. It was then for the first time ascertained that Atkinson occupied land which he had never purchased, and which he did not own, unless he obtained the same by virtue of the aforesaid statute of limitations, or by a gift. There is no room for any claim in this case that the aforesaid measurement of a portion of the east line of Jenness's land and the driving of the stake where they did was a settlement or compromise of any dispute concerning boundary lines, for no such dispute existed. Besides, nothing was said at the time with reference to how any line should be extended from such stake, whether east, west, north or south, or in some other direction, nor with reference to how far it should be extended, whether ten feet, a hundred feet, four

hundred feet, or some other distance. Until the survey was made in the spring of 1884, no one knew where the true boundary line between Sheldon's and Atkinson's lands was, and up to that time Atkinson had no intention of taking, occupying or appropriating any land except his own, and certainly no person ever intended to give to Atkinson the land in controversy. Jenness died some years before this action was commenced, and consequently did not testify in the case; but evidently he did not intend to give to Atkinson any of his land, for on December 18, 1868, he conveyed all his land, including the land in controversy, by *warranty deed* to Mrs. Hedrick, and Mrs. Hedrick did not know at that time of the supposed gift of the land from Jenness to Atkinson. At the time when she purchased the land it was vacant and unoccupied, and the records of the county showed that Jenness had a clear and unincumbered title in fee to the same, and there was nothing in the records of the county tending to show that Atkinson ever owned or made any claim to the same, or indeed that he ever owned any land within a distance of 200 feet from the stake. There was nothing at the time in the public records tending to show that Atkinson had or claimed any interest in the Wilson and Burt land, and if the statute of limitations had not then commenced to run, it has never so run as to bar Sheldon's right to recover the land. If Mrs. Hedrick by her purchase obtained a good title to the land in controversy before any statute of limitations had commenced to run against her title, then Sheldon has a good title; for Atkinson has not been within the state of Kansas a sufficient length of time since that time for any statute to have commenced to run and fully operate so as to bar the title to which Sheldon has succeeded. And certainly Mrs. Hedrick obtained a good title to the land before any statute of limitations had commenced to run, unless she was bound to take notice of the driving of said stake, and of the supposed parol gift from Jenness to Atkinson. She had no actual notice of any such thing. Even if the fence which was built at some time in the fall of 1868, or later, had been built by Jenness,

still the land in controversy was not at that time in the actual possession of any person claiming adversely to the owner, and it takes actual, open, visible, notorious, exclusive and adverse possession, either to give to subsequent purchasers constructive notice of the supposed interests of an adverse claimant, or to start the statute of limitations to running in favor of such adverse claimant, and not merely the driving of a stake at a supposed corner, or the building of a fence on the property of the owner and by the owner. To hold that Atkinson owns the land in controversy would be to hold either that real estate may be transferred by parol without consideration and without the owner's knowing or intending that such should be the result, or that a statute of limitations may commence to run against a cause of action for the recovery of real estate before any cause of action has accrued, and without any adverse possession, or indeed any possession by the person in favor of whom it is supposed the statute of limitations has commenced to run, and in violation of that rule, that the legal title to unoccupied lands draws to it the constructive possession; and it must also be held that an innocent subsequent purchaser of real property may not safely rely upon the public records to show where the title is, but must take notice of all outstanding claims or interests, although they may be found only in parol and without consideration, and may be unknown and undiscoverable by any ordinary diligence. It will hardly do to say that the driving of a stake in the middle of a man's land, or the building of a fence by the owner in the middle of his land, would give to some other person a right to a portion of the land, or would start the statute of limitations to running against the owner and in favor of such other person, even if one or both the parties so intended or desired. In the present case Atkinson had not even a semblance or pretense of possession until sometime in the spring of 1869, and before that time the land had been sold and conveyed twice to subsequent purchasers, and a possession then taken by Atkinson was too late.

It is true that when Sheldon purchased the land, on March

19, 1884, Atkinson had such a possession as would put Sheldon upon inquiry, but such was not the case when either Mrs. Hedrick or Mrs. Dickey purchased the land. Atkinson had no possession at that time, and of course both Mrs. Hedrick and Mrs. Dickey obtained a perfect title, and nothing has occurred since that could take away from them or their grantees or deprive them or their grantees of such title. No limitation *created by statute* has intervened, and the courts should not create a limitation. But if a limitation is created, it cannot bar Sheldon's right unless it is a limitation more than "*equal to* the statute of limitations" created by the legislature, for the limitation created by the legislature would not bar Sheldon's rights. Of course Sheldon took notice of Atkinson's possession and of Atkinson's rights, but at the time when Sheldon purchased the property Atkinson had obtained no rights as against Sheldon's grantors. Sheldon has succeeded to all the rights of Mrs. Hedrick and Mrs. Dickey; and from the title deeds and the public records it appears that Sheldon has the entire title, and Atkinson has utterly failed to overturn this title. Of course the burden of overthrowing this title rested upon Atkinson, and he has failed.