## H. C. MOORE *et al.* v. JESSE E. WILEY *et al.*

EJECTMENT — *Good Title Acquired by Statute of Limitations.* Where an owner of real estate consisting of three lots composing one tract, sells a portion of the same to B., pointing out and designating that portion of the tract which he claims and believes he is selling, and and puts B. into the possession thereof, and B. immediately builds a dwelling-house thereon and resides upon the property, claiming to own the same, for more than fifteen years, he has obtained a good title thereto under the fifteen-years statute of limitations, (Civil Code, § 16, subdiv. 4,) as against subsequent purchasers of the property, although in fact it was supposed by both the parties to the purchase and sale at the time of the sale and afterward, that it was the north lot that was being sold, while in fact it was a part of the middle and south lots that was pointed out and designated and into the possession of which the purchaser was placed, and although the deed

from the vendor designated the north lot, and the purchaser paid the
taxes on that lot, and the vendor and his subsequent grantees paid
the taxes on the other property.

### Error from Bourbon District Court.

EJECTMENT. The material facts fully appear in the opinion.

*Dillard & Padgett*, for plaintiffs in error.

*Bawden & Coon*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of ejectment, brought in the district court of Bourbon county on July 27, 1886, by H. C. Moore and Al. Popkess, against William Banks, to recover the possession of the south half of lot number 3, in block number 17, in the city of Fort Scott. After the first trial, and on May 16, 1887, the plaintiffs, with leave of the court, amended their petition and prayed, not only for the recovery of the south half of said lot number 3, but also for the recovery of the north half of lot number 3, in said block. The defendant answered, alleging that he had been in the actual and continued possession of the property described in the plaintiffs' amended petition for more than fifteen years last past before the commencement of the action, under a deed duly recorded, claiming to be the owner of the property, and that during all that time he had resided upon the property and paid all the taxes assessed against it, and had put valuable improvements thereon of the value of $1,000. The plaintiffs replied, denying generally all the allegations of the defendant's answer. On September 12, 1887, the case was tried before the court without a jury, and the court found generally in favor of the defendant and against the plaintiffs, and rendered judgment accordingly; and the plaintiffs, as plaintiffs in error, brought the case to this court for review. Since the case was brought to this court the defendant, William Banks, died, and the case has been revived against his

heirs-at-law, as the defendants in error, to wit: Jesse E. Wiley, Luella Wiley, Edward Banks, and Henry Banks.

The facts of this case as they appear from the evidence are substantially as follows: In February, 1870, and prior thereto, Joe Emmert owned lots numbered 1, 3, and 5, in block number 17, in Fort Scott. These lots so adjoined each other as to constitute one tract of land, and they constituted the west half of the block, and were each 50 feet wide north and south by 150 feet long east and west. Lot number 1 was the north lot, lot number 3 was the middle one, and lot number 5 was the south one. This block was bounded on the west by Little street, and on the south by Sycamore street. Sometime in February, 1870, or before that time, Emmert sold lot number 1 to Banks, and lot number 5 to John Aikens, they intending at some time in the future to purchase the middle lot and divide it between them. Emmert at the time pointed out and designated to each of the purchasers the property which he claimed and believed he was selling to them, and each immediately took the possession of that portion which he thought he was purchasing; but they were all mistaken as to the location of the property. Banks in fact took the possession of the south half of lot number 3, and the north half of lot number 5, the property which is now in controversy; while Aikens in fact took the possession of a part of Sycamore street. The mistake arose from an inaccurate or erroneous survey. Banks immediately built a dwelling-house upon the property now in controversy, and continuously resided therein until since this case was brought to this court, when he died. Some time after the purchase of this property by Banks, the M. K. & T. Railroad Company, by proper condemnation proceedings, took as a part of their right-of-way about one-half of lot number 1, being that portion of the lot which would lie northwest of a line drawn from the northeast corner of the lot to the southwest corner thereof, but Banks had no notice of the condemnation proceedings, and has not received any portion of the condemnation-money. As before stated, Banks resided in the house which he built upon the property in controversy in 1870

and had the actual and continuous possession of the property from the time of his first occupation thereof in February, 1870, until after the trial of this case in the court below, believing all the time until within about a year before the trial that he occupied lot number 1 and only that lot; and during all that period of time he paid the taxes assessed or levied upon that lot. In the meantime Emmert sold lot number 3 to Hugh C. Custer, and by the deed from Emmert to Custer and other deeds, the record title to the property in controversy has been transferred to the plaintiffs in this action, by whom and their grantors, all the taxes levied upon the property have been paid. The plaintiffs claim under a warranty deed executed by their immediate grantor to them on February 3, 1886.

We think the judgment of the court below must be affirmed. As the court below found generally in favor of the defendant and against the plaintiffs, it must now be assumed that all its findings, conclusions, and inferences from the evidence, so far as there was any evidence to support them, were in favor of the defendant and against the plaintiffs; and such findings, conclusions, and inferences must in this court be held to be conclusive, so far as the evidence will at all warrant or justify the same. This is the view upon which we shall decide this case, and upon this view we might properly take the facts to be even more favorable to Banks than we have stated them. We shall take the facts to be that Emmert sold to Banks the very identical property of which Banks took the possession, and upon which he built his house and made his improvements; for at the time of the purchase and sale, Emmert owned all the property — the property in controversy as well as lot No. 1 — and had the right to sell the same, and he pointed out and designated to Banks the very property of which Banks took the possession as the property which he, Emmert, was selling and Banks purchasing, and Emmert put Banks into the possession thereof. This was in February, 1870. The deed was not executed until in October of that year; and when it was executed it did not convey the property pointed out and designated by Emmert, but conveyed

other property. Prior to that time Banks had built his house and at that time he was residing upon the property, and perhaps in equity he could have compelled Emmert to convey to him the identical property which Emmert pointed out and designated to him as the property which he, Emmert, was selling. All the parties were mistaken. Both Banks and Emmert believed that Emmert, by the deed, was conveying the identical property which he had previously pointed out, designated, and sold to Banks. The facts would then seem to be that Banks purchased, took possession of, made valuable improvements and resided upon one piece of property, and obtained a deed for another piece of property, under the mistaken belief that the property which he purchased and resided upon was lot number 1, when in fact it was parts of lots numbers 3 and 5. He believed he occupied lot number 1, and that he obtained a deed for the property which he occupied; and he continuously paid the taxes levied upon lot number 1, and did not pay the taxes levied upon the property which he actually occupied. This property he occupied in the manner aforesaid for more than fifteen years before this action was commenced, and therefore we would think that the fifteen-year statute of limitations, (Civil Code, § 16, subdiv. 4,) would bar any action brought by any person holding the record title, to recover the property from him. This is not a mere question concerning disputed boundary-lines between adjoining proprietors, as was the case in the case of *Winn v. Abeles*, 35 Kas. 85. In this case the party claiming the property, partly at least under the statute of limitations, was a purchaser thereof, and he was put into the possession thereof by his vendor, who, prior to the sale, was the owner thereof. Nor is this a case of doubtful or questionable possession and claim of ownership as against an owner or subsequent purchaser without actual knowledge of his possession or claim. Banks had the actual, absolute, open and visible possession of the property. He was actually residing upon the same; and his possession was vastly superior to the possession held by any one of the parties claiming under the statute of limitations

as against the owner or innocent purchaser in the following cases: *Sheldon v. Adkinson*, 38 Kas. 14; *Sanford v. Weeks*, 38 id. 320; *Gildehaus v. Whiting*, 39 id. 706.   Emmert had full knowledge in this case; and the parties subsequently purchasing the property could not have avoided knowing that Banks had the possession thereof, and that he was claiming to be the owner of the same, if they had looked at the property and made proper inquiry.   Banks had such a possession and claim of ownership as will satisfy all the authorities with regard to obtaining title, or quieting title, or possession under the statute of limitations. (Sedg. & W. Tr. Title to Land, §§ 729, 730, 735 to 740.)

The judgment of the court below will be affirmed.

All the Justices concurring.