JAMES T. FINLEY v. ADAM FUNK.

1. DISPUTES, *Which may be Arbitrated.* All controversies of a civil nature, including disputes concerning real estate, may be the subject of arbitration. (*Stigers v. Stigers,* 5 Kas. 652, referred to, and disapproved.)

2. SETTLEMENT OF DISPUTE — *Consideration — Valid Contract.* A dispute had long existed between the plaintiff and defendant in regard to the boundary line running north and south, dividing two contiguous tracts of land which they owned. The defendant claimed that a certain hedge was standing upon the true line, while the plaintiff claimed that it was three rods farther east. A written agreement was finally entered into establishing the boundary on the line claimed by the defendant. As a part of the contract, the defendant agreed to pay the plaintiff for the strip of land lying between the established line and the one claimed by the plaintiff, which was ascertained to be two and one-half acres, the value thereof to be fixed by arbitration. *Held,* In an action on the agreement to recover the value of the land, that the mutual concessions of the parties in fixing the disputed boundary line, and the relinquishment by the plaintiff of his claim to the disputed strip of land, is sufficient consideration to support the defendant's promise to pay the value of the strip, and that the contract is valid, and should be upheld.

*Error from Labette District Court.*

ACTION brought by *James T. Finley* against *Adam Funk*, to recover the sum of $300, alleged to be due under a certain agreement, which is set out at length in the petition. The petition and agreement are as follows:

"The plaintiff, James T. Finley, for cause of action against the defendant, Adam Funk, alleges that he, the plaintiff, is the owner of the S.E. quarter of section 26, township 31, range 17, Labette county, Kansas; that the defendant was at the date first hereinafter mentioned the owner of the S.W. quarter of said section; that for many years past there has been a difference between plaintiff and defendant relative to the true location of the quarter-section corner on the south line of said section, the same being the corner marking the south end of the dividing-line between the land owned by plaintiff and defendant as above described, and the true location of said line has been doubtful and uncertain, the plaintiff as he believed rightfully claiming to own the land up to a line running to a point equidistant from the S.E. and S.W. corners of said section, and the defendant claiming to own the land up to a line running to a point three rods east of said central point, which would make his quarter-section about six rods longer on its south line than plaintiff's quarter-section.

"And the plaintiff alleges that the same question as to the true location of said quarter-section corner existed between J. B. Swart and H. Bouton, land-owners in the north half of section 35, lying immediately south of said section 26; that the county surveyor of said county, pursuant to notice received from said J. B. Swart, had notified all of said parties that on the 12th day of June, 1884, he would establish said corner; that at the time named all of said parties were present, and said Swart and Funk had made and submitted to said surveyor certain affidavits, and the plaintiff and the said Bouton had submitted a portion of their evidence, when a difference arose as to the right of plaintiff and Bouton to have inspection of the affidavits submitted by Swart and Funk, the plaintiff claiming the right to look at said affidavits, and the surveyor refusing them permission to do so; that thereupon plaintiff and Bouton refused to proceed further with their evidence before said surveyor, and stated that they would appeal

from any report thereof which said surveyor might make adverse to their interests; that thereupon all of said parties agreed to dispense with the services of said county surveyor in establishing said corner, and as a means of avoiding all difficulties and litigation concerning the location of said corner, entered into and executed the written agreement, a copy of which is hereto attached, marked 'A,' and made a part hereof; and said corner-stone was thereupon by said parties located and established in conformity with said agreement, and defendant Funk has ever since been in the quiet and undisputed possession and control of the strip of land described.

"And plaintiff alleges that said county surveyor computed the quantity of land for which defendant agreed to pay as aforesaid, and the same amounted to $2\frac{1}{2}$ acres, and there were and are in fact two and one-half acres in said strip; that plaintiff has in all respects on his part complied with the provisions of said agreement, and in pursuance thereof, selected an arbitrator to value said land as agreed, and the defendant also selected one, but afterward the defendant wrongfully and without cause induced the arbitrator selected by him to refuse to act in the matter, and since then the defendant has refused to select another arbitrator, and has notified plaintiff that he will not submit the valuation of said land to arbitration as provided by said agreement, and that he will not pay for the same, and has ever since refused to pay for said land or to submit the question as to the value thereof to arbitration as agreed, though often requested by plaintiff so to do, all to the great damage of plaintiff in the sum hereinafter named.

"And plaintiff alleges that on the 30th day of June, 1884, said county surveyor filed in the office of the register of deeds in and for said county, a plat and notes of said survey establishing said quarter-section corner at the point agreed upon, the same as if said corner had been established by him upon the evidence instead of upon the agreement of the parties as aforesaid, and by reason of the facts hereinbefore set forth, no appeal has been taken therefrom; that the value of the land in said strip for which defendant agreed to pay as aforesaid, is, and was at the date of said agreement, not less than $300.

"Wherefore, plaintiff asks judgment for the sum of $300, together with interest and costs."

"A."

"Articles of agreement between J. B. Swart, owner of the N.W. quarter of section 35, township 31, range 17, Labette

county, Kansas, and H. Bouton, owner of the west half of the N.E. quarter of the same section; and J. T. Finley, owner of the S.E. quarter, and Adam Funk, owner of the S.W. quarter of section 26, township 31, range 17, in said county and state, witnesseth:

"Whereas, there has heretofore been a dispute and question about the location of the quarter-section corner common to the land described on the line between said sections 26 and 35; now it is agreed that—

"1. Said quarter-section corner of said line between said sections 26 and 35 shall be, and hereby is, forever established on a line with the hedges dividing the land of said Swart and Bouton and Funk and Finley.

"2. Said Swart shall pay to said Bouton the value of the strip of land lying west of the hedge between the said lands of said Swart and Bouton, and east of a line drawn or extended southerly from a point this day by actual measurement, found to be equidistant between the N.E. and N.W. corners of said section 35, toward the quarter-section corner in the south line of said section.

"3. Said Funk shall pay to said Finley the value of the strip of land lying west of the hedge between the land of Funk and Finley, and east of a line extended northerly from the point this day ascertained to be equidistant from the S.E. and S.W. corners of said section 26, toward the quarter-section-corner on the north line of said section.

"4. All parties agree that the county surveyor shall compute the quantity of land in each of the strips described, and the value thereof shall be fixed by three disinterested arbitrators, one to be chosen by Swart and one by Bouton, and the two to choose a third, for the land in section 35; and one to be selected by Finley and one by Funk, the two so chosen to select a third, for the land in section 26; one set of arbitrators may value the land in each section, if agreed; and all parties hereby agree to abide the decision of said arbitrators, and said Swart and Funk agree to pay the amount of their respective awards within ten days from the date of such award. Arbitrators to be selected within ten days from the date hereof. The parties to whom said awards are to be paid as above provided may declare this contract void as far as it affects them, unless said awards are paid as above provided, or they may

enforce said awards by any proceedings necessary to collect the same.

"Dated this 11th day of June, 1884.

[Signed]                    J. B. SWART.
                            ADAM FUNK.
                            JAS. T. FINLEY.
                            H. X BOUTON, (his X mark)."

The defendant filed an answer, to which the plaintiff replied. At the trial of the cause at the November Term, 1883, the defendant objected to the introduction of any evidence under the petition, on the ground that it did not state facts sufficient to constitute a cause of action. This objection was sustained, and judgment rendered in favor of the defendant for costs, to which ruling and judgment an exception was taken by the plaintiff, who brings the case here for review.

*C. H. Kimball,* for plaintiff in error.

*Perkins & Morrison,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: Two principal reasons are urged against the sufficiency of the petition, the first of which is that the cause of action attempted to be set forth is based on an agreement to arbitrate a dispute concerning real estate; and it is argued that such a dispute is not the subject of arbitration. This position cannot be maintained. It seems that in an early day there was some doubt whether controversies concerning land could be submitted to arbitration, but this doubt can hardly be said to exist now. In discussing what may be the subject-matter for submission, Mr. Morse, in his work on Arbitration and Award, says:

"In England, in old times, the right to submit to arbitration disputes concerning real estate, especially where the actual title was in dispute, was regarded with great jealousy, but any doubt concerning the validity of such submissions has been long since entirely dissipated. In the United States few traces of the ancient doctrine are to be found, and there is no question that any dispute whatsoever relating to realty may be submitted to arbitration."

And he cites numerous authorities to sustain the conclusion which he has reached. (Morse on Arb. and Award, 54.) Mr. Caldwell, in his treatise on Arbitration, page 3, after speaking of the doubt which formerly existed upon the question, concludes as follows:

"Indeed, at the present day it is quite clear that any disputes concerning land may be referred to arbitration, and that one party may be directed to execute all the necessary conveyances to the other, and to perform all such acts as may be requisite to confer the right and the possession."

The only case cited to sustain the objection is that of *Stigers v. Stigers*, which is noted in the appendix of 5 Kas. at page 652. No opinion was written in the case, and the grounds upon which the decision was based cannot now be definitely ascertained. It appears to have been an action to recover real estate, and the plaintiff offered in evidence an arbitration bond executed by the parties, and an award of the arbitrator, which were excluded by the court for reasons not stated. It is true the syllabus of the case as it is reported, sustains the view contended for by the defendant; but whether the syllabus was prepared by the justice who pronounced the decision in the case, or by the reporter, is not known. At the time the decision was made, there was no statute, as there is now, providing that the justice delivering the opinion shall prepare and file a syllabus of the points decided in the case. The syllabus of the case, by whomsoever prepared, states a doctrine which is in conflict with well-settled law that we cannot approve or follow. If there was ever any doubt in this state of the right to submit such controversies to arbitration, it has been settled by recent legislation. In 1876 it was enacted, "That all persons who shall have any controversy or controversies may submit such controversy or controversies to the arbitration of any person or. persons to be mutually agreed upon by the parties." (Laws 1876, ch. 102, § 1.) The language of this provision is broad and inclusive, and covers disputes concerning real estate equally with disputes relating to personal property.

1. Disputes which may be arbitrated.

The other objection to the petition is, that it fails to show that the plaintiff ever had any interest in the strip of land for which he demands payment, or that he relinquished any right thereto to the defendant, or that the defendant received anything at his hands that he was not already entitled to, and therefore that there was no consideration for defendant's agreement to pay for the disputed strip of land. From the petition it appears that the plaintiff and the defendant were the owners of adjoining tracts of land, the plaintiff owning the southeast quarter of section 26, and the defendant the southwest quarter of the same section. For many years a dispute existed between them relating to the true location of the boundary line dividing these tracts. Finley claimed that the true line of division was one lying equidistant from the east and west lines of the section, while Funk claimed that his land extended to a line three rods east of the middle boundary as claimed by Finley, which would make Funk's quarter-section six rods longer on its south line than Finley's quarter-section. On the 12th of June, 1884, they undertook to have the boundary line established by the county surveyor, as provided by statute, but a dispute arising as to the procedure, they agreed to dispense with the services of the county surveyor in establishing the corner, and they fixed upon a boundary line by an agreement between themselves. The agreement was in writing, and by it the boundary was established on the line contended for by Funk, and upon which a hedge was standing. As a part of the agreement, it was stipulated that—

"Said Funk shall pay to said Finley the value of the strip of land lying west of the hedge between the land of Funk and Finley, and east of the line extended northerly from the point this day ascertained to be equidistant from the southeast and southwest corners of said section 26, toward the quarter-section corner on the north line of said section."

It was stipulated that the county surveyor should compute the quantity of land in the strip described, and its value was to be determined by three arbitrators, one to be chosen by Finley and the other by Funk, and the two so chosen to select

a third, and the parties agreed to abide by the decision of these arbitrators, and that Funk should pay the amount of the award within ten days from the time it was made; and that unless the award was paid in the time stated, Finley was at liberty to declare the contract void so far as it affected him, or he might enforce it by any proceeding necessary to collect the same. It is alleged that the county surveyor computed the quantity of land in the strip, and found that it amounts to two and one-half acres; that the plaintiff has complied in every respect with the provisions of the agreement, but that the defendant has refused to select an arbitrator, and has notified the plaintiff that he will not pay for said land nor submit the question as to the value thereof to arbitration as agreed; and that the value of the land included in the strip was $300. This agreement is somewhat ambiguous in its terms, but the majority of the court are of the opinion that it is valid, and that the petition states a cause of action. The view taken by the court is that all the provisions of the agreement must be taken together, and if by any reasonable construction it can be upheld, it should be done. By this agreement the parties sought to settle a perplexing question of boundaries, and avoid what might be a protracted and expensive litigation. The agreement is one they had a right to make, and its purpose is looked upon by the courts with favor. It has been said in a case where disputed boundary lines were involved, that—

"It is the policy of the law to allow parties to settle and adjust doubtful and disputed facts between themselves, and when such a matter which before was uncertain, has been established by agreement between the parties upon good consideration passing between them, they are not permitted afterward to deny it." (*Vossburgh v. Teator*, 32 N. Y. 567.)

The fact that the parties entered into an agreement is evidence that they desired as far as possible to waive and dispense with formalities; and even if the agreement is formally defective, the court should seek to uphold it and carry out the obvious intent of the parties. The defendant claimed that his land extended to the hedge, while the plaintiff insisted that the

hedge stood three rods over on his land.    They employed a
surveyor, and testimony was takèn in an ineffectual effort to
ascertain the true line.    The line was fixed, and the defendant,
as a settlement of the question, agreed to pay the value of the
disputed strip.    The consideration for the agreement, as the

**2. Settlement of dispute — consideration — valid contract.** plaintiff contends, is the mutual concessions of the parties in fixing the dividing-line, and the abandonment by the plaintiff of any claim to the disputed strip, which is deemed by the court to be sufficient to sustain the defendant's promise.    The other view, and the one entertained by the writer of this opinion, is that the agreement was without consideration, and is invalid.    The subject of the controversy between the parties was, where was the true line of division between their farms?    It was expressly agreed by them that the boundary is forever established on a line with the hedge, which by another provision of the agreement is said to divide the land of Funk and Finley. · It seems to me that the parties did not seek to make a new boundary line, nor to change the old line, but only undertook to find and fix the pre-existing line — the true line of division between the two quarter-sections.    The land lying west of this line, including the strip in question, was owned by Funk, and in which Finley had no interest.    He owned no more than the southeast quarter-section, which extended westwardly to a hedge, and no farther, and he therefore had no interest in the strip west of the hedge, nor in any part of the southwest quarter, to convey. It is true that Funk agreed to pay Finley the value of two and one-half acres of land, and we should, if possible, uphold the agreement, and give effect to the apparent purpose of the parties; but no agreement can be upheld that is not founded upon a valid and sufficient consideration.    The stated and only consideration for the promise of Funk is the two and one-half acres of land which, as we have seen, he already owned, and in which the plaintiff had no interest to convey. If the agreement is interpreted as showing that the parties regarded the line three rods east of the hedge ·to be the true one, and that the land included in the strip belonged to Fin-

ley, which from the language employed would seem to be a strained interpretation, it would still fail of its purpose. In the opinion of the writer, the agreement is not effective as a conveyance, and would not operate to transfer the title of the disputed strip of land to the defendant. It is not alleged in the petition that any deed or instrument which would operate as a conveyance of any part of plaintiff's quarter-section had been tendered to the defendant.

Another point presented against the petition by the defendant is, that it contains an allegation that the surveyor proceeded with the survey alleged to have been begun by him, and filed his plat and notes with the register of deeds, showing that the corner was established on the evidence produced before him instead of upon the agreement of the parties, and it is claimed that that survey is conclusive upon the parties. This point is answered by the allegation that the services of the surveyor in establishing the corner were dispensed with, and that the line was established by the agreement, which is here held to be valid. The action of the surveyor was taken subsequently to this agreement, and is not binding upon the plaintiff.

From the conclusion reached, it follows that the ruling of the district court, holding the petition to be insufficient, must be held erroneous, and its judgment will therefore be reversed, and the cause remanded for another trial.

All the Justices concurring, except as to the second paragraph of the syllabus, in which Justice JOHNSTON does not concur.