No. 19,390.

R. R. LEWIS *Appellee*, v. THE GOVE COUNTY TELEPHONE COMPANY and E. D. CORRICK, *Appellants*, et al.

SYLLABUS BY THE COURT.

ACTION FOR SERVICES—*Both Corporation and Its Manager Liable.* In an action for services performed for a corporation the evidence is held sufficient to support a verdict against it and its manager.

Appeal from Gove district court; JACOB C. RUPPEN-THAL, judge. Opinion filed April 10, 1915. Affirmed.

*C. L. Thompson*, of Hoxie, for the appellants.
*Lee Monroe, James A. McClure*, and *C. M. Monroe*, all of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: R. R. Lewis sued the Gove County Telephone Company, a corporation, and E. D. Corrick, for compensation for his services rendered in managing a telephone system. His claim was that he had performed the work referred to for a time under the employment of one Homer Foltz, and that in a subsequent contract with Foltz the defendants assumed the payment of the amount then due; and that afterwards the plaintiff continued the work in the employ of the defendants.

Evidence was introduced tending to show these facts: Corrick was the principal owner of the stock of the corporation, and managed its business. In July, 1911, Corrick and Foltz made an agreement by which Foltz was to deed a tract of land to Corrick and accept as payment the telephone system and exchange, and Corrick was to transfer to him his interest in the company, with its material, appurtenances and franchises. Foltz took possession of the telephone business and employed Lewis at $100 a month to manage it. This arrangement continued until December 15, when the contract between Corrick and Foltz was rescinded by agreement, and Corrick resumed control, the business being thereafter done under the name of the Gove County Telephone Company. In this second deal with Foltz Corrick agreed to pay the amount then due to Lewis. After Foltz had retired from the business Lewis continued at work by request of Corrick, who repeatedly promised to pay him, no agreement however being made as to the rate of compensation.

Corrick, while denying having made an agreement with Foltz to pay the amount owing to Lewis, insists that he should not in any event be held liable upon it because, not being in writing, it was not enforceable under the provision of the statute of frauds relating to promises to pay the debt of another (Gen. Stat.

1909, § 3838), unless it was supported by a substantial consideration, and that there was no evidence that he received any consideration for it whatever. His testimony was that he agreed with Foltz that the trading cóntract was to be surrendered, and that a new agreement was made, by which Foltz was to buy the telephone plant for $10,000 in cash, which was to be paid in ten days, and which was never paid at all. His theory is that he had the right, in view of Foltz' failure to make the payment, to rescind the contract and resume possession of the property; that if he had promised to pay the sum owing to Lewis, it would have been upon condition of Foltz paying the $10,000, and as Foltz never paid this, the consideration for the promise to pay Lewis wholly failed. A witness gave this testimony as to the agreement made between Corrick and Foltz in December:

"At last Mr. Corrick said, 'All right, I'll pay you so much more,' and that was entered on the note. Foltz then said, 'Now, we have made this thing perfectly satisfactory all around, but there is one thing that we haven't provided for, . . . the employment of the men that have been in my employ.' . . . Mr. Corrick made the remark, 'I don't know why I should pay that.' Foltz replied, 'You certainly should pay it, because you wouldn't allow me to collect so as I could pay it.' . . . Mr. Corrick said, 'All right, let's get this straightened up and settled. I am going to keep Lewis anyway, and I will just take the contract that you made with Lewis and pay him for it.' . . . The substance of the agreement between them was that the trade, the prior trade was off, and the matter was to be settled on a money basis. Mr. Foltz was to have a certain length of time to pay for it in, and in the meantime, all the property he had in his possession belonging to the Telephone Company was to be returned back. . . . Mr. Corrick was to take charge, and the bill of sale that Mr. Corrick had given to Mr. Foltz was to be surrendered by Mr. Foltz."

In view of the fact that the property appears to have been subsequently treated as though Foltz's interest had been extinguished, this evidence is open to

interpretation as showng a settlement which merely left to Foltz the right to purchase the property within the time fixed at the stipulated price. The full terms of the deal do not appear, but enough was shown to justify the inference of an executed contract covering a number of matters, including that in relation to the payment of Lewis's claim. It does not appear that the agreement by Corrick to pay the amount due to Lewis was made contingent upon the payment of $10,000 by Foltz. The jury were asked what the consideration was for the promise by Corrick or the company to pay the debt owed by Foltz to Lewis, and answered: "Turning back Tel. System and unpaid phone rents under the Foltz contract." This clearly means that the jury found the promise to have been one of the terms of the agreement by which the original trade was rescinded, and upon the grounds already stated there was evidence sufficient to support the finding. The original contract between Corrick and Foltz provided that "all deeds and papers" were to be "turned over to the respective parties" on August 15, 1911. Corrick maintains that as Foltz had gained possession of the telephone property by agreeing to convey some land in payment for it, and had failed to do so, he no longer had a right to retain it; that as he was under a legal obligation to return it to Corrick his consent to doing so was not a sufficient consideration to uphold a new contract. (9 Cyc. 347.) Whether in the contract of settlement Foltz agreed to do anything more than what was already his legal duty can not be definitely ascertained from the record. But there was obviously room for a controversy concerning the rights of the parties, and the evidence justifies the inference that some sort of a dispute arose over the matter, and that it was adjusted by the new agreement. "The compromise of a disputed claim may uphold a promise, although the demand was unfounded." (9 Cyc. 345; *Finley v. Funk,* 35 Kan. 668, 12 Pac. 15.)

The corporation contends that in any event it should not have been held liable on this promise, because there was no evidence that it was made by Corrick otherwise than in his own individual capacity. The assertion is made that what was contracted to be sold to Foltz was Corrick's stock in the company. The deals with Foltz appear to have been made in the name of Corrick, but the original contract called for turning over to Foltz the telephone system with its material, appurtenances and franchises. And upon the whole record there was room to infer that he was acting in behalf of the company, whose general manager he was.

Corrick contends that there is no basis for holding him personally liable for the part of the plaintiff's claim after Foltz had given up the business. Although the services were performed for the corporation, and Corrick was acting as its agent, there was evidence sufficient to justify the inference that it was the intention of the parties that he should also be personally bound, and in that case liability could attach to both. (31 Cyc. 1553, 1554.)

The verdict read that the jury found for the plaintiff, nothing being said as to whom it was rendered against. There being nothing to indicate the contrary, it is to be interpreted as running against both defendants. (*Wilson v. Means,* 25 Kan. 83; 38 Cyc. 1882.)

The allowance of interest is complained of, but it was allowed only from the date of the judgment, and this the statute provides for.

The judgment is affirmed.