No. 22,724.

JOHN FULLER, *Appellant*, v. JOHN K. WRIGHT and JUSTICE E. WRIGHT, partners, etc., and the ASSOCIATED EMPLOYERS RECIPROCAL, *Appellees*.

### SYLLABUS BY THE COURT.

MASTER AND SERVANT—*Injuries—Election of Remedies—Stipulation to Settle under Workmen's Compensation Act Valid.* Where a workman was injured in the service of his employers under such circumstances as to give him reasonable grounds for a cause of action for damages at common law against his employers, or to base a claim against them under the workmen's compensation act if their business was conducted under that act, and his employers in good faith believed that they were conducting their business under the provisions of that act, and had purchased and paid for indemnity insurance pursuant to that belief, although they had not formally filed their election with the secretary of state until after the workman had been injured, it was not against public policy for the workman and his employers to agree that he should waive his right to sue for damages at common law,

Fuller v. Wright Bros.

and to claim compensation under the act in lieu thereof; and the mutual agreement of the workman and his employers that the terms of the compensation act should be used as the basis for determining the respective rights and liabilities of the parties, and to measure the compensation, if any, for the plaintiff's injuries, was a valid, contractual engagement which the court should enforce according to its terms.

Appeal from Geary district court; ROSWELL L. KING, judge. Opinion filed April 10, 1920.   Reversed.

*James V. Humphrey,* and *Arthur S. Humphrey,* both of Junction City, for the appellant.

*L. B. Morris,* of Junction City, and *Thad B. Landon,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff was injured while in the service of the defendants, Wright Brothers, and they agreed with him that their liability therefor, if any, should be ascertained and determined on the basis prescribed by the workmen's compensation act, and not under the common law.

To that end, the plaintiff filed an action against the defendants, alleging that they were engaged in the business of collecting garbage, under contract with the Federal government, on the Fort Riley and Funston Military Reservation, and that plaintiff was employed by them in that work, and while so employed—

"While standing on an autotruck of the last aforesaid defendants for the purpose of loading the same with garbage, refuse and ashes (the place being on said military reservation), the said truck was by the driver thereof suddenly and without warning to plaintiff started up with a violent jerk, causing plaintiff to be violently thrown to the ground, dislocating, bruising and breaking the bones of his right hip, and resulting in a total permanent disability to plaintiff, said total permanent disability commencing immediately with said injury and disabling him from earning any wages at any time since."

The petition then recited that upon the happening of plaintiff's injury, Wright Brothers informed the plaintiff that their business was conducted under the provisions of the workmen's compensation act, and that they held a policy of insurance issued by the defendant, the Associated Employers Reciprocal, for which they had paid $150, and which covered claims

against them by employees injured in their service, and that they and the defendant insurance company would compensate the plaintiff. At the same time they paid plaintiff the sum of $28 under the liability imposed by the compensation act. The petition further alleged that after many such promises of defendants, and delays without payment, an attorney for the plaintiff asked to see the defendants' insurance policy; and this attorney, having examined it, expressed a doubt as to whether the defendants' business came under the scope of the compensation act without an express election of the defendants to place their business under its provisions, and the attorney for plaintiff informed defendants of plaintiff's intention to begin a common-law action for damages. As an inducement to plaintiff to refrain from commencing such common-law action, the defendants agreed to file their election with the secretary of state to come under the compensation act, and that their election should be considered as of a date prior to plaintiff's injuries, and that plaintiff could proceed against them under the act. Accordingly this offer was agreed to by the plaintiff; and the defendants, Wright Brothers, filed their election to come under the act, which election recited—

"The undersigned, J. K. Wright and J. E. Wright, as partners under the name of Wright Brothers, herewith declare that they elect to accept under the Workman's Compensation Act, . . . and they herewith declare that this acceptance relates back to September 9, 1918, on which date they had established relations with their employees of said business and with a liability insurance association on the basis of said business being under said Act."

The petition also alleged that the defendant, Associated Employers Reciprocal, at the time of writing the insurance policy for Wright Brothers, represented to them and induced them to believe that their business was under the compensation act; and at that time the insurance company obligated the Wright Brothers to permit it to control the settlement of claims for injuries to employees and to grant to it the exclusive right to settle or negotiate for a settlement; and that the insurance company, in this case, agreed to investigate plaintiff's accident and injury and to pay any claim for loss, and that it assumed control of all proceedings ensuing therefrom, and thereby sub-

stituted itself for its codefendants in all the duties arising from said accident and injury.

The petition continues:

"Sixth. . . . Further plaintiff says that the said Wright Bros. on the occurrence of said accident gave immediate written notice thereof to their said codefendant, and thereupon the said Associated Employers Reciprocal informed said Wright Brothers that it would take charge of and adjust said case, and thereafter it proceeded to negotiate with plaintiff for a settlement, and requested him to submit in writing his claim under the Workmen's Compensation Law, which plaintiff did.

"Seventh. Plaintiff further says that he has wholly failed to agree with said defendants or either of them for a settlement of his claim for compensation; that on the 3rd day of July, 1919, plaintiff notified, in writing, each of said defendants that he consented to an arbitration of his said claim and requested each of said defendants to consent to such arbitration, but that said defendants and each of them refused such arbitration; that the said defendants, Wright Bros., refused such arbitration only because they were directed and ordered so to do by their codefendant; that the said Associated Employers Reciprocal insist that their codefendants shall not settle nor pay plaintiff's said claim under penalty of losing their said insurance, and that it (Associated Employers Reciprocal) assumes exclusive control of the disposition that shall be made of said claim, and will pay all expenses arising from the litigation thereof and any judgment that may result therefrom in favor of said plaintiff."

A copy of the contract of insurance, and of the Wright Brothers' election to come under the compensation act, were attached to plaintiff's petition. Plaintiff prayed for compensation and other proper relief.

Defendants' demurrer to this petition was sustained, and this ruling is here for review.

With much that was said by the trial court in its written opinion on the demurrer, and by counsel for the defendants, we are inclined to agree. The defendants could not be subjected to an action under the compensation act merely by filing an election to come under that act and dating that election back to a date prior to plaintiff's accident. When that accident occurred the rights of plaintiff and the liabilities of his employers were fixed. Those rights could not be altered merely by the subsequent election of defendants. But while we concede this, that proposition does not dispose of this case. The plaintiff and his employers had perfect liberty to settle, compose, and adjust the matter in any lawful and honorable manner.

Plaintiff believed he had a cause of action against his employers under the common law. His employers believed they were under the compensation act, and had been induced to that belief by the defendant insurance company. The insurance company obviously believed it also, for it accepted the Wright Brothers' money for a policy which specifically covered the subject; and in consideration of $150 paid to it by Wright Brothers, they did—

"Insure and indemnify the subscriber (herein called the assured) against legal liability imposed by the Workmen's Compensation Act or Acts of the state named in said schedule for bodily injuries accidentally sustained (whether resulting in death or otherwise) which may be suffered or alleged to have been suffered by any 'employee or employees of the assured, to whom he may be liable under said Workmen's Compensation Act or Acts while engaged in any of the assured's work specified in said schedule. . . .

"Description of work to be covered: Garbage collecting, refuse and ashes (excluding garbage reduction or fertilizer plants). Payroll for 'Comp' coverage to include drivers and drivers' helpers, also chauffeurs and chauffeurs' helpers."

While the Wright Brothers were not under the act until and after the time they had filed their election to conduct their business under its terms (Laws 1917, ch. 226, § 1), the agreement between the parties that their respective rights and liabilities should be settled and determined according to its terms was a perfectly valid agreement. The parties could have lawfully agreed to settle the matter by arbitration, or by any reasonable means they might agree upon. Nothing is more common nor more commendable than honorable and just agreements, amicable settlements, and similar stipulations to avoid or minimize litigious controversy. Even when litigation is commenced, stipulations are permissible to shorten or eliminate certain matters of fact not seriously in dispute, although tedious or expensive to prove; and the courts encourage a willingness on the part of litigants to forego rights which could perhaps be established in a thoroughly contested lawsuit. In *Dubbs v. Haworth,* 102 Kan. 603, 606, 171 Pac. 624, it was said:

"It is not required of a creditor that he shall demand the uttermost farthing which may be technically due him. He may be satisfied with less than his just due; and if, in fact, he honestly believes that more is

Fuller v. Wright Bros.

due him than he is asking to be paid for, his debtor has no just complaint that the creditor, upon the debtor's request, specifies more items than the aggregate amount for which the creditor is insisting on payment. Modesty of demands is ordinarily a virtue, not a fault."

It would hardly be asserted that if the plaintiff and defendants had agreed to refer the question of defendants' liability to the grievance committee of the Teamsters' Union and to abide by its decision that such agreement would be void. It would be valid. Such illustrations from daily life might be multiplied. Why then might not the parties agree that the provisions of the workmen's compensation act should be taken as a basis for determining the rights and liabilities of the plaintiff and his empolyers? No rule of public policy would forbid. Public policy is a creature of the legislature, and it has declared in favor of this identical policy—as far as it feels that it can constitutionally go. Were it not for some doubt about its power to do so, it would not leave it to the election of such employers as defendants as to whether they would conduct their business under the compensation act or not. The legislature would do as it does where the hazardous nature of the business cannot be disputed, and would have placed it absolutely under the act. Where the business is not inherently hazardous the legislature has made the application of the act optional and contractual. The trial court was persuaded that some evil might arise if employers might fix the time when their business should be considered to be conducted under the act independently of the actual date of filing their formal election with the secretary of state. Probably so, if such were done in prejudice of their workmen's rights; but we can discern no evil which can flow from permitting the employer and his injured workman to agree about the matter.

In *Shellberg v. McMahon,* 98 Kan. 46, 49, 50, 157 Pac. 268, this court upheld an agreement where one of the parties to a controversy was to bring a suit and the other was to make no defense thereto. It is not uncommon for parties to waive certain defenses, or to estop themselves by their conduct from setting up certain defenses which would otherwise be valid; and it is a common and good practice for parties to stipulate as to certain controvertible features of a lawsuit so as to limit the issues of fact or of law needing the trial court's determina-

tion. (*A. T. & S. F. Rld. Co. v. Starkweather,* 21 Kan. 322; *Groat v. Pracht,* 31 Kan. 656, 3 Pac. 274; *Finley v. Funk,* 35 Kan. 668, 12 Pac. 15; *Brooks v. Hall,* 36 Kan. 697, 14 Pac. 236; *Lanphear v. Ketcham,* 53 Kan. 799, 37 Pac. 119; *Lewis v. Telephone Co.,* 95 Kan. 136, 139, 147 Pac. 1122; *Shellberg v. Mc-Mahon,* 98 Kan. 46, 49, 50, 157 Pac. 268; 8 Cyc. 516-522; 9 Cyc. 345, 346; 5 R. C. L. 878, 901.)

It must be held that the agreement to use the compensation act as the basis for measuring the defendants' liability, rather than the common law, violated no rule of public policy.

It is not so clear from the pleadings that the defendant insurance company would be bound by the result which may flow from the determination of the cause between the plaintiff and his employers upon their agreement that the compensation act shall govern their respective rights and liabilities. That is to say, it is not altogether clear whether the insurance company was a party to that agreement. But with commendable frankness, the learned counsel for the insurance company admitted in the oral argument in this court that his company would feel itself obliged to pay any liability which might be adjudged against Wright Brothers, whether that liability were determined to exist under the compensation act or under the common law. That point being conceded, the judgment will be reversed with instructions to overrule the demurrers interposed by the defendants and to proceed with the cause.